IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHARLENE JANSON | * |
|     Plaintiff | * |
| v. | *  Case No: 1:19-cv-00079 - DLB |
| REITHOFFER SHOWS, INC. | * |
|     Defendant | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Reithoffer Shows, Inc., Defendant, by KARPINSKI, COLARESI & KARP and DANIEL KARP, its attorneys, submits this Memorandum in Support of its Motion for Summary Judgment.

### STATEMENT OF FACTS AND INTRODUCTION

Plaintiff alleges, in her one count Complaint, that on September 17, 2016 at the Great Frederick Fair in Frederick, Maryland, a ride attendant employed by Defendant, and Defendant, were negligent in a variety of unspecified ways, resulting in Plaintiff falling from the platform of the "space ride" when her foot became caught in the ride. ECF 1.  In her Answer to Interrogatory No. 3, in which she was asked to describe the occurrence, she stated:

> On the date of the occurrence, Plaintiff traveled from her home in Baltimore to Frederick, Maryland to attend the Great Frederick Fair with her family.  She was accompanying her nephew on a kiddie ride known to Plaintiff as the "Space" ride.  She asked the attendant if it was okay to ride the ride and was told yes.  She walked up the ramp and onto the ride platform.  She assisted her nephew into the ride, which appeared to be in

> the shape of a boat. She then attempted to get into the ride herself. She had her left foot/leg in the boat and as she attempted to finish boarding the boat, she fell.
>
> Plaintiff contends the platform was too narrow for an adult; Plaintiff contends there were not adequate hand rails/assistive devices for an adult to board the ride; Plaintiff contends there was no warning about the dangers of an adult boarding the ride; Plaintiff contends there was no step to assist her onto the ride; Plaintiff contends the attendant should not have permitted her to board the ride; and Plaintiff contends the ride was set up in an unreasonably dangerous manner; Plaintiff refers Defendant to Plaintiff's Complaint wherein Plaintiff fully states all claims of negligence against Defendant.

A copy of her Answer to Interrogatory No. 3 is attached as Exhibit 1.

Plaintiff provided additional details at her deposition on July 16, 2019. A copy of the relevant portions is attached as Exhibit 2. She is and was 63 inches tall. Id. at p. 28. She and family members attended the fair. She and her great niece Jessica rode on a kiddie train ride. She was not aware of any size restrictions on that ride. She saw other adults on the ride and thus did not ask the attendant if she was allowed to ride the train. Id. at pp. 21, 27.

Plaintiff and Joseph, her seven year old great nephew, then went to the "space ride." Id. at pp. 15, 22. Copies of photographs of that ride, taken by Plaintiff's liability expert at a location in South Carolina, are attached as Exhibit 3. She did not notice any signage concerning size restrictions on the space ride but she did not see any adults on that ride, and asked the ride attendant if she could go on the ride with Joseph. He allegedly said "sure." Exhibit 2 at pp. 27-28. She followed Joseph up what she believes was a ramp to the ride platform, and then followed him around the platform to one of the boat cars on the ride. He got in the front of the boat. She made sure his seatbelt was

2

on, and then put her left foot in the back of the boat to board it from the platform. Id. at pp. 29-30. At that point she fell backward. She denied that either foot slipped, and testified that she believes she fell because the platform was not wide enough for an adult. She believes that her left foot simply got caught on something in the boat. Id. at p. 33. She then fell backward, with her left foot caught in the boat, until somehow her left foot was released, resulting in her left breast and ribs hitting the platform, her right shoulder hitting the barrier (a fence) around the platform, and then falling flat on the ground on her back. Id. at pp. 34-38. Plaintiff then testified that her foot actually did not get caught until she started to fall backward, and that she does not know what caused her to start to fall other than her surmise that the platform where she was standing was not wide enough. In her opinion, the only things wrong with the ride were the narrowness of the platform and the absence of a handrail. Her primary injury was a Lisfranc fracture of the left foot. Id. at pp. 41-42, 48, 78-79. A Lisfranc fracture involves displacement of one or more metatarsal bones from the tarsus.

Tommy Popovich, Jr., Defendant's corporate representative, was deposed on September 16, 2019, and relevant portions of the transcript of his testimony are attached as Exhibit 4. He testified that size restrictions on rides are supplied by the ride manufacturers, and individuals who exceed the maximum height limitation should not be permitted actually to ride, although there is no prohibition on an adult boarding the ride to place their child on the ride. Popovich Deposition, relevant portions attached as Exhibit 4, pp. 49-50. Height restrictions are simply required to make sure that people are properly held in their seats. The maximum height to ride the Space Ride, which was

manufactured in 1982, is 48 inches. Id. at pp. 51-56. The witness testified that there was no violation of the height restriction limitations here, because the ride was not in motion at the time of the accident. Id. at pp. 59-61.

Mr. Popovich did not recall whether the accident was reported to Defendant when it occurred. Id. at p. 75. However, an employee of the fairgrounds prepared a typed incident report, and it was ultimately forwarded by the fair to Defendant. A copy is attached as Exhibit 5. In addition, Mr. Popovich contacted the Maryland Department of Labor, Licensing and Regulations as required, and did report the accident to that agency. See Exhibit 6.

Plaintiff also took the deposition of Melinda Kolbus, Defendant's risk manager, on November 15, 2019. She testified that an individual taller than the maximum stated height should not be permitted to ride on the Space Ride, but there are no restrictions on them entering the ride or walking on the platform in order to assist in putting children on the ride. She testified that the ride attendant's duty was not to operate the ride if anyone over 48 inches was in a ride car, but it was not his duty to prevent persons over 48 inches tall from being on the ride's platform. Melinda Kolbus Deposition, relevant portions attached as Exhibit 7, pp. 17-18, 28-30.

Defendant believes that the ride attendant probably just told Plaintiff that she could board the platform to seat her great nephew, and that he did not tell her that she could "ride" the ride. However, the ride attendant was a seasonal employee, hired only for the Great Frederick Fair, and cannot be found. There is no direct evidence to rebut the Plaintiff's assertion that she was told that she could "ride" the ride. Nevertheless, it is

undisputed that the ride was not in motion or operation at the time of Plaintiff's fall. Consequently, what the ride attendant did, or did not, tell Plaintiff is irrelevant.

While expert testimony is not ordinarily required in negligence cases, at least where there are no complicated medical questions involving fact finding by medical experts, see, e.g. Wilhelm v. State Traffic Safety Comm'n, 230 Md. 91, 99-11, 185 A.2d 715, 719 (1962), expert testimony is needed to establish the standard of care where the matter at issue involves professions, trades or special skills which are "beyond the ken of the average layman." Sage Title Group, LLC v. Rowan, 455 Md. 188, 217, 166 A.3d 1026, 1043 (2017). In a case involving alleged negligence in operating an amusement ride, expert testimony is similarly required were the standard of care, breach, and causation are not within the experience or knowledge of the average layman. See e.g. Deciutiis v. Six Flags America, LP, 2017 WL 1376671 (Md. Ct. of Sp. App. April 17, 2017); Stolting v. Jolly Roger Amusement Park, Inc., 37 Fed. Appx. 80, 2002 WL 1310390 (4th Cir. June 17, 2002).[1] Here, nothing in the lay evidence can establish either the standard of care, a violation of that standard, or a causal connection between any such violation and Plaintiff's injury. See Board of Trustees v. Patient First Corp., 444 Md. 452, 478-79, 120 A.3d 124, 139-40 (2015); Schultz v. Bank of America, N.A., 413 Md. 15, 30-31, 990 A.2d 1078, 1087-88 (2010); Crockett v. Crothers, 264 Md. 222, 224-5, 285 A.2d 612, 614 (1972). Although Defendant has agreed that evidence that the ride was in operation at the time of Plaintiff's injury

---

[1] An exception to this rule is that expert testimony is not needed if the alleged negligence, if proven, would so obviously be shown that the trier of fact could recognize it without expert testimony. Id. That is not the case here.

5

would, if believed, be some evidence of a violation of the standard of care, the evidence is undisputed that the ride was <u>not</u> in motion or operation at the time of the accident. In other words, even if the ride attendant erred in telling Plaintiff that she could "ride" the ride, it is undisputed that the ride was not in operation at the time of Plaintiff's fall. There is no lay evidence that Defendant violated any standard of care by simply allowing Plaintiff to board the platform, and certainly no lay evidence that a violation of the height restriction caused Plaintiff to fall.

In an effort to cure this evidentiary deficiency, Plaintiff relies on the opinion and report of Kenneth Martin. A copy of his April 4, 2019 preliminary report and his resume are attached collectively as Exhibit 8. After reciting the allegations as to what occurred, Mr. Martin wrote:

> It is my opinion, with a reasonable degree of professional probability, that the Defendant was negligent. This ride is a Kiddie ride and has specific requirements for its riders. A rider must be at least 36 inches tall and no taller than 48 inches. In addition, there are no steps or handrails to assist patrons in getting into the ride carrier. There were no warning signs or operator instructions advising riders of entering and exiting hazards. The standard of care as well as industry standards were breached, in the above process.

Although he generically referred in his preliminary report to "standards" developed under supervision of American Society for Testing and Materials, and the ASTM F-24 Committee, no specifics of any kind were given. Inasmuch as the required report, as written, was essentially meaningless and useless, Defendant asked Plaintiff to provide, at a minimum, the specific ASTM standards upon which Mr. Martin relied. Plaintiff's counsel responded, by email dated July 23, 2019, copy attached as Exhibit 9, sending a

copy of ASTM F770-15 and E 1020-13, and also stating that Mr. Martin might rely on COMAR regulations identified by Defendant in its Answers to Interrogatories.[2] As can be seen, the ASTM standards provide certain general guidelines for operation, maintenance and inspection procedures for amusement rides to be performed by the owner/operator. The guidelines primarily discuss the necessity of having certain required protocols in place. They do not however either state or imply that a patron who exceeds a ride's posted height limitation be prohibited from being on a ride platform. They do not require specific handrails or the like on rides. They do not require specific signage. They do not specify the height or dimensions of ride platforms. In short, they do not set forth any specific guidelines which, if violated, would be some evidence of a standard of care, breach of a standard of care, or a causal connection between breach and injury.

After providing his preliminary report in April, 2019, Mr. Martin inspected the ride in South Carolina on September 26, 2019, and he issued a second report on November 18, 2019. The core of the report is found in the first paragraph of page 3:

> It is my opinion, with a reasonable degree of professional probability, that the Defendant was negligent. This ride is a Dalton Kid Ride and has specific requirements for its riders. A rider must be at least 36" tall and no taller than 48". Larry Green should have measured Mrs. Janson's height and should have told her that she was too tall to ride the ride. An adult, whose height exceeds the maximum allowable height,

---

[2] Defendant identified COMAR 9.12.62 and following. None of the COMAR regulations specify the dimensions of ride platforms, prohibit those taller than specified heights from entering a ride platform, or require "handrails" on rides of the type at issue, although it may be noted that the Space Ride boat cars do have a rail in front of the car and on the seat backs which can be held on to, to assist in entering or exiting the ride, as shown in Mr. Martin's photographs, Exhibit 3.

should never have been permitted to board a carrier.  The platform is too narrow for an adult.  In addition, there are no steps or handrails to assist patrons in getting into the boat-shaped carriers.  (*See* Photographs form my 09/26/19 site visit; Janson Depo at 32:8-11; 79:9-10.)  The ride lacked proper warning signs and/or operator instructions advising riders on the platform of entering and existing hazards.  The standard of care as well as industry standards were breached.

A copy is attached as Exhibit 10.  Although the report is longer than his initial report and adds details, it still fails to identify any specific safety guidelines which were allegedly breach, and which caused the accident.

Defendant now moves for summary judgment.  Proof of Plaintiff's negligence claim requires evidence of the standard of care, breach, and causation.  In this case, the lay evidence cannot establish any of these elements.  Expert testimony is required.  Mr. Martin's proffered testimony, as gleaned from his required reports, cannot establish the elements of the tort either.  Defendant is entitled to summary judgment on this basis.  See Deciutiis, supra, and Stolting, supra.

## SUMMARY JUDGMENT STANDARD

Judge Ellen L. Hollander summarized the summary judgment standard in another amusement ride case, McNeill v. Trimpers Rides of Ocean City, Inc., 2015 WL 5334066 *2-3 (D.Md. September 11, 2015), as follows:

> Summary judgment is governed by Fed.R.Civ.P. 56(a). It provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp. .,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

*3 The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see Dulaney v. Packaging Corp. of Am.,* 673 F.3d 323, 330 (4th Cir.2012).

"A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)), *cert.* denied, 541 U.S. 1042, 124 S.Ct. 2171, 158 L.Ed.2d 732 (2004). However, the court should "view the evidence in the light most favorable to ... the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644–45 (4th Cir.2002); *see Matsushita Elec. Indus. Co.,* 475 U.S. at 587; *FDIC v. Cashion,* 720 F.3d 169, 173 (4th Cir.2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249. Of import here, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts,* 780 F.3d 562, 569 (4th Cir.2015); *Mercantile Peninsula Bank v. French,* 499 F.3d 345, 352 (4th Cir.2007); *Black & . Decker Corp. v. United States,* 436 F.3d 431, 442 (4th Cir.2006); *Dennis,* 290 F.3d at 644–45. Indeed, in the face of conflicting evidence, such as competing affidavits or conflicting deposition testimony, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. Put another way, it is not the province of the court to resolve factual disputes.

If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes

summary judgment. *Anderson,* 477 U.S. at 248. *See Libertarian Party of Va. v. Judd,* 718 F.3d 308, 313 (4th Cir.2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a *matter* of law." *Id.* at 252. But, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Judge Hollander also summarized the elements of a negligence action:

*4 A federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice of law rules. *Colgan Air, Inc. v. Raytheon Aircraft Co.,* 507 F.3d 270, 275 (4th Cir.2007). Regarding tort claims, Maryland applies the law of the state where the alleged harm occurred ("*lex loci delicti*"). *See, e.g., Proctor v. Washington Metropolitan Area Transit Auth.,* 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010); *Erie Ins. Exch. v. Heffernan,* 399 Md. 598, 625, 925 A.2d 636, 651 (2007); *Phillip Morris, Inc. v. Angeletti,* 358 Md. 689, 744, 752 A.2d 200, 230 (2000). Because the alleged events took place in Maryland, the substantive tort law of Maryland governs plaintiff's negligence claim. *See Hauch v. Connor,* 295 Md. 120, 123–24, 453 A.2d 1207, 1209 (1983).

In Maryland, "to assert a claim in negligence, the plaintiff must prove: '(1) that the defendant was under a duty to *protect* the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.' " *100 Inv. L td. P'ship v. Columbia Town Ctr. Title Co.,* 430 Md. 197, 212–13, 60 A.3d 1, 10 (2013) (quoting *Lloyd v. Gen. 'l Motors Corp.,* 397 Md. 108, 131–32, 916 A.2d 257, 270–71 (2007)) (emphasis omitted); *see Schultz v. Bank of Am., N.A* ., 413 Md. 15, 27, 990 A.2d 1078, 1086 (2010) ("In a negligence case, there are four elements that the plaintiff must prove to prevail: 'a duty owed to him [or her] (or to a class of which he [or she] is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages.'") (quoting *Jacques v. First Nat. Bank of Maryland,* 307 Md. 527, 531, 515 A.2d 756, 758 (1986)) (alterations in *Schultz* ).

Id. at *4.

As to a business invitee, the owner or occupier of land has a duty to exercise reasonable care to protect the invitee from injury caused by an unreasonable risk that the invitee would be unlikely to perceive in the exercise of ordinary care for her own safety, which the owner or occupier knows or in the exercise of reasonable care could have discovered. However, the owner or occupier is of course not the insurer of the invitee's safety. Id. at * 5.

## ADDITIONAL DISCUSSION

As has been demonstrated, the Plaintiff's lay evidence is insufficient to establish any of the three elements of the negligence claim. Nor does any of Mr. Martin's opinion evidence, as reflected by his reports, established the elements of a negligence claim. Exhibits 8 and 10. Although he refers generally to industry guidelines, none of the guidelines to which he refers provides any factual basis for his apparent conclusion that Defendant violated any standard of care which caused the Plaintiff to fall. Federal Rule of Evidence 702 sets forth the legal standard for expert testimony:

> If scientific, technical or *other* specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact at issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts of data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The trial court of course has the gate-keeping function of ensuring that any and all scientific testimony is not only relevant, but reliable. Daubert v. Merrell-Dow Pharmaceuticals, Inc., 509 U.S. 579, 588, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). As in Stolting, supra, the proposed expert testimony was nothing more than ipse dixit – bare

11

conclusions without reliable support. Mr. Martin's opinion therefore cannot be considered. And because the Plaintiff can adduce no legally sufficient evidence of the applicable standard of care, breach, or causation, Defendant is entitled to summary judgment.

                              Respectfully submitted,

                              KARPINSKI, COLARESI & KARP

BY:     /s/_____
       DANIEL KARP, #00877
       120 E. Baltimore Street
       Suite 1850
       Baltimore, Maryland 21202
       (410) 727-5000
       (410) 727-0861 (facsimile)
       brunokarp@bkcklaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of December 2019, a copy of Defendant's Memorandum in Support of Motion for Summary Judgment was electronically filed, with notice to:

Deborah L. Potter, Esquire
Suzanne V. Burnett, Esquire
Potter Burnett Law
16701 Melford Boulevard
Suite 421
Bowie, Maryland  20715

                              /s/_____
                              Of Counsel for Defendant