### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **CHARLENE JANSON,** | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | |
| | * | **Case No.: DLB-19-79** |
| **REITHOFFER SHOWS, INC.,** | * | |
| **Defendant.** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### MEMORANDUM OPINION AND ORDER

On September 17, 2016, Charlene Janson and her family attended the Great Frederick Fair in Frederick, Maryland. Ms. Janson fell and sustained injuries as she boarded a ride designed for children that carnival operator, Reithoffer Shows, Inc. ("Reithoffer"), owned and operated. On January 9, 2019, she filed suit in negligence against Reithoffer. ECF 1.

From May 4 to 7, 2021, a jury heard evidence about Ms. Janson's visit to the Fair and the injuries she sustained while trying to board a kiddie ride. The jury found that Reithoffer was negligent, that Ms. Janson was contributorily negligent, that Reithoffer had the last clear chance to avoid her injury but failed to do so, and that Ms. Janson did not assume the risk. The jury awarded Ms. Janson $350,000 in non-economic damages.

On May 21, 2021, Reithoffer moved for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure. ECF 77 & 77-1. Reithoffer makes two principal arguments. First, Reithoffer argues that the last clear chance doctrine is inapplicable to the facts of this case and that there was insufficient evidence to support the jury's finding of last clear chance. Second, it claims plaintiff should not have been permitted to raise last clear chance at the close of evidence

because plaintiff did not previously identify the theory in the joint pretrial statement as required by Rule 16 of the Federal Rules of Civil Procedure.  Ms. Janson filed an opposition, ECF 91, and Reithoffer filed a reply, ECF 94.  The Court finds no hearing necessary.  *See* Loc. R. 105.6 (D. Md. 2021).

For the reasons discussed below, Reithoffer's motion is denied.  Reithoffer did not make a Rule 50(a) motion for judgment as a matter of law on the grounds asserted in its Rule 50(b) motion.  As such, the Rule 50(b) motion is not properly before the Court.  Even if the motion had been properly presented, the Court finds there was sufficient evidence to warrant the last clear chance instruction and support the jury's verdict.  Finally, Reithoffer never cited a Rule 16 violation during trial as a basis for an objection to instruction or argument on last clear chance, and the Court will not set aside a jury verdict under those circumstances.

## I.      The Trial

Several witnesses testified at trial, but only two of them—Ms. Janson and her sister Carolyn Martin—told the jury about their firsthand knowledge of the day's events.  The ride operator, Larry Green, could not be found and did not testify at trial.  The following non-exhaustive recitation of the trial evidence contains the evidence most relevant to the pending motion.

Ms. Janson's sister, Carolyn Martin, testified that she, her grandchildren Joseph and Jessica, Ms. Janson, and other relatives went to the Great Frederick Fair together on September 17, 2016.  ECF 89, at 76:25 – 77:12, 85:8–9.  She said that, when they arrived, they "bought [their] wristbands.  Everybody got a wristband to ride the rides . . . .  [They] started walking down to the kiddie rides."  *Id.* at 77:22–24; *see id.* at 85:12–14.

Ms. Janson testified that she did not purchase either a wristband or tickets to ride the rides because she was not planning to ride them.  ECF 89, at 101:8–18.  She told the jury that her two-

year-old great-niece Jessica "asked [her] if [she] would get on the train ride with her" and that she agreed. *Id.* at 101:13–14.  Ms. Janson knew she could get on the train ride with Jessica "[b]ecause there were adults ahead of [her] with children getting on the train."  *Id.* at 101:21–24.  After she rode with Jessica, Ms. Janson's six-year-old great-nephew Joseph asked if she would ride a different kiddie ride, the Space Ride, with him.  *Id.* at 102:5–6.  Ms. Janson could see the Space Ride running from a distance, but she could not see whether adults were riding it.  *Id.* at 102:14–21.

Ms. Martin testified that she "asked the gentleman that was running the [Space] [R]ide if [her] sister could get on with [her grandson Joseph] . . . . And he said absolutely, she could get on the ride with him."  *Id.* at 79:12–17.  Ms. Martin then "double-checked and asked him twice.  [She] said, are you sure that she could get on the ride?  And he said yes, that she could get on the ride with him."  *Id.* at 79:22–25.

Ms. Janson testified that she too "asked the attendant if [she] could get on the ride with Joe and he said to [her], yes."  *Id.* at 103:1–2; *see id.* at 128:7–9.  She explained that she asked the ride operator whether she could get on the ride "[b]ecause some kiddie rides adults can get on and others you can't."  *Id.* at 103:3–5.  She gave the ride operator her "ticket after [she] asked him if [she] could get on," and "[h]e took [her] ticket."  *Id.* at 104:16–21.  She did not remember how many tickets she handed the ride operator or how many were required to ride the Space Ride.  *Id.* at 128:10 – 129:1.  Ms. Janson walked to the boat-shaped tub Joseph wanted to board, helped him in, and then tried to get into the seat behind him.  *Id.* at 105:8–12.  She put her left foot in the tub while her "right foot [wa]s firmly on the platform."  *Id.* at 105:11–22, 132:1–12.  She lifted her right foot "somewhat" off the platform and fell.  *Id.* at 106:3–6, 132:1–12.  Her left foot was caught

in the tub as she fell backward.  *Id.*  She sustained significant injuries to her foot.  *Id.* at 105:12–13, 106:23 – 112:23.

Ms. Janson introduced the testimony of an amusement park safety expert, who testified about ride safety regulations in general and about the Space Ride in particular.  The expert inspected the Space Ride in 2019.  *Id.* at 19:24, 20:9–11.  Photographs of the ride taken by the expert were introduced into evidence.  *Id.* at 20:3–6, 44:15–21.  There was no dispute that the Space Ride inspected by the expert in 2019 was the same Space Ride that Ms. Janson attempted to board in 2016.  The expert described the ride's physical characteristics.  *Id.* at 22:24 – 73:22. He explained that the ride was in the Kiddie Land area of the fairgrounds.  *Id.* at 71:24–25.  He testified about a safety sign placed near the Space Ride on the day he inspected it.  *Id.*  The sign was attached to a 42-inch-high fence surrounding the ride.  Ex. 1-A.  The sign instructed that riders may not be more than 48 inches tall.  Exs. 1-D & 4.  The expert testified that the placement of the sign was "not at eye level."  ECF 89, at 41:6.  He also opined that "the print [was] tiny, barely readable."  *Id.* at 41:9.   In his opinion, the sign "needed to be more prominently displayed."  *Id.* at 41:10.  He explained that the Code of Maryland Regulations ("COMAR") provides that "a legible sign indicating the restrictions shall be posted in full view of the individual seeking admission to the amusement attraction" and that his opinion was that "[f]ull view is not hung to a 42-inch high piece of fence."  *Id.* at 68:25, 69:1–3.  He further explained that, "where [Reithoffer] placed the sign, that location is where the people line up to get in the ride, the queue line of the ride.  So there are people standing in front of the sign."  *Id.* at 41:11–14.

When asked about whether there was enough space for an adult to walk safely along the Space Ride's platform to reach one of the tubs, the expert said, "In all honesty[,] I would turn around and go back the other way and walk around the ride because it's not enough space really

to safely walk there, particularly if you're off the ground 24 or 36 inches or more."  ECF 89, at 26:19–25 – 27:1.  The perimeter surrounding the tubs was "12 to 13 inches, and even less on that space tub."  *Id.* at 27:2–6.  According to photographs of the Space Ride, the platform size and tub exterior and interior are visible to patrons standing outside the fence surrounding the ride.  Ex. 1.

Reithoffer's only witness was its corporate representative, Thomas Popovich, Jr.  Mr. Popovich did not witness the events preceding Ms. Janson's fall.  He informed the jury about the layout of the fairgrounds and the design of the Space Ride.  ECF 92, at 10:3–6.  He stated Reithoffer "tr[ied] to separate as best you can . . . to keep the children with the children rides and the adult rides on the other end, the more extreme rides."  *Id.*  He explained that the Space Ride Ms. Janson tried to board with her great-nephew was a "kiddie ride."  *Id.* at 10:16–19.  He said that the Space Ride tubs have three benches each and are designed to hold "[t]wo children per bench."  *Id.* at 12:13.  Mr. Popovich said "the benches are three-foot wide left to right, so you could fit two children in.  And then from bench to bench would be about a foot and a half."  *Id.* at 12:15–17.

Mr. Popovich agreed that adults were not supposed to ride "[t]his specific kiddie ride."  *Id.* at 31:10–12.  He explained the ride had a 48-inch height restriction because adults "can't fit" in the ride.  *Id.* at 32:7–8.  He admitted that it is a "possibility" that an adult could be injured trying to get into the ride's tubs.  *Id.* at 32:5–6.  He also said that adults were encouraged to accompany their children onto the ride platform to help them into the ride and that "80 to 90 percent of the time" adults approached the ride with children to assist them in getting into the ride.  *Id.* at 24:16–22, 24.

Mr. Popovich told the jury that the Space Ride had two indicators that individuals over 48 inches tall could not ride it: a safety sign and a height stick.  *Id.* at 12:25 – 13:1, 19:19–20.  The

safety sign "explains the different limitations to the ride," including a 48-inch height restriction. *Id.* at 12:20–22.  The sign is "attached to the fencing for the Space Ride, and it stays attached unless it needs replaced." *Id.* at 12:25 – 13:1.  Even when the rides travel from fair to fair, the sign "doesn't come off, it stays on that piece of fence.  That piece of fence goes in the same spot every week." *Id.* at 14:1–3.  The sign is attached to the fence "[d]irectly right next to the entrance" to the ride. *Id.* at 19:6–7.  The sign is checked daily. *Id.* at 19:12–13.  Mr. Popovich admitted that a picture of the Motorcycle Ride, a different ride that was attached the Space Ride, showed that the Motorcycle Ride did not have a safety sign affixed to the fence when the picture was taken by plaintiff's expert during his 2019 inspection of the Space Ride. *Id.* at 55:5–12.  Mr. Popovich noted that the fair was not open when the picture was taken, "so [he could] say maybe they were replacing the sign." *Id.* at 55:11–12.  As to the location of the safety sign, Mr. Popovich agreed that "strollers could block the sign" when the sign is placed on the fence. *Id.* at 54:19–21.  He also agreed it can be busy in the kiddie midway area on a Saturday, the day of the week Ms. Janson was injured. *Id.* at 52:13–15.

Mr. Popovich testified that there also is a "height stick . . . on the other side of the entrance gate" to the ride. *Id.* at 19:19–20.  Mr. Popovich explained that the height stick is placed at eye level "because . . . that is the maximum height requirement, so that's just how big the sign has to be in order to measure the patrons." *Id.* at 56:3–7.  The ride operator was trained to use the "height stick to enforce the height restrictions." *Id.* at 33:2–4.  The height restriction for "every ride is specific to that ride[,] and [the ride operators] will . . .  know what their height restriction is supposed to be." *Id.* at 22:13–17.  The operator must "refuse anyone over 48 inches to ride that ride," including "an adult that would try to ride the Space Ride." *Id.* at 33:5–10.

Beyond Mr. Popovich's testimony about safety protocol, there was no evidence that the safety sign or height stick was in place or visible when Ms. Janson tried to board the Space Ride. Ms. Janson testified that she did not see warning signs about height restrictions. ECF 89, at 105:4–6, 127:7–9.

Mr. Popovich also testified about the ride operator's training and duties with respect to collecting tickets from riders.  He explained that ride operators were trained on the number of tickets required for the ride they oversaw, ECF 92, at 22:8–12, and he agreed that all riders needed tickets or a wristband to ride because there are no free rides at the carnival, *id.* at 33:18–21.  He also agreed adult escorts did not need to give the operator tickets in order to walk up to the Space Ride's platform.  *Id.* at 34:2–4.  He testified to the ride operator's process prior to admitting riders: "Go to the entrance gate.  Open the gate.  Stand there.  Take tickets.  Check height."  *Id.* at 24:7–12.  He admitted the operator would be the individual collecting tickets.  *Id.* at 26:8–12.  He also testified that the ride operator is "going to count the tickets."  *Id.* at 34:18–19.  Plaintiff asked Mr. Popovich: "So if someone's trying to give him six tickets, an adult and a child, [the ride operator] should be trained to say, hey, where is the other kid because adults can't ride?"  *Id.* at 35:1–3.  Mr. Popovich admitted, "That's fair."  *Id.* at 35:4.

Mr. Popovich agreed that "the ride operator is in a position of authority or power over the customers" and, as "the gatekeeper for who can get on that ride," the operator "has the authority to prohibit people from riding."  *Id.* at 57:5–12.  Plaintiff asked Mr. Popovich whether he agreed that "the ride operator is your last stop if people don't see the sign," *id.* at 57:18–20, and he said he "agree[d] that . . . he is to check the height requirements.  That's his job," *id.* at 57:21–23.

At the close of evidence, both sides moved for judgment as a matter of law under Rule 50(a).  Reithoffer argued there was insufficient evidence for a reasonable jury to find that it was

negligent.  *Id.* at 7–9.  Ms. Janson argued she had conclusively established negligence and that a reasonable jury could not find she was contributorily negligent or had assumed the risk.  *Id.* at 78:17 – 79:19.  The Court denied both motions, finding there was sufficient evidence for the jury to decide the questions of negligence, contributory negligence, and assumption of risk.  *Id.* at 78:10–15, 81:17 – 82:5, 87:20 – 88:14.

Because the Court denied her Rule 50(a) motion as to contributory negligence, Ms. Janson requested a jury instruction on last clear chance, a defense to contributory negligence.  *Id.* at 79:10–15.  The Court noted that it would be proper to instruct the jury on last clear chance if there was evidence of the doctrine's three elements: "(1) that defendant was negligent; (2) that plaintiff was contributorily negligent, and (3) that there was something new or sequential which affords the Defendant a fresh opportunity of which he fails to avail himself to avert the consequences of his original negligence."  *Id.* at 88:25 – 89:11 (quoting *Nationwide Mut. Ins. Co. v. Anderson*, 864 A.2d 201, 206 (Md. Ct. Spec. App. 2004)).  When the Court asked Reithoffer to identify the actions that amounted to Ms. Janson's alleged contributory negligence, counsel said "[t]here [were] two things," the first of "which [was] failure to observe a sign that would show what the height restriction was," and the second of which was "just the very act of what she was doing, which is as she has described what occurred, one could conclude that she, through either inadvertence or attention, lost her balance and fell."  *Id.* at 90:2–8.  At that point, the Court denied plaintiff's request for the last clear chance instruction, finding insufficient evidence to support the instruction. *Id.* at 99:18–20.

After further reflection on the caselaw, evidence, and argument, the Court changed its ruling and granted plaintiff's request for the last clear chance instruction, reasoning:

> I heard [defense counsel's] argument that the possible contributory negligence was both the failure to see the sign, or adhere to the sign, and then possibly the entering

of the boat.  If the jury were to find that the first act was contributory negligence, meaning the failure to see or adhere to the sign, then the presence of the operator on the stand and . . . he at that point was the last clear chance.  So there is a set of facts that the jury could find that he was the last clear chance.

*Id.* at 106:23 – 107:7.  After the Court informed the parties that the last clear chance instruction would be given and asked for any further objection, *id.* at 111:13–17, defense counsel stated that the instructions, "subject to the objections [he'd] already noted, [were] fine," *id.* at 112:8–9.  The special verdict sheet asked several questions, and in response to them, the jury found that Reithoffer was negligent, that Ms. Janson was contributorily negligent but did not assume the risk, and that Reithoffer had the last clear chance to avert Ms. Janson's injuries.  The jury found in favor of plaintiff, awarding her $350,000 in damages.  This motion followed.

## II.    Discussion

### A.  Rule 50(b) Motion

Reithoffer filed the pending motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure Rule.  Rule 50(b) permits a party to make a "renewed motion for judgment as a matter of law" within 28 days after entry of judgment if "the court does not grant a motion for judgment as a matter of law under Rule 50(a)."  Fed. R. Civ. P. 50(b).  Rule 50(a) provides that a party may make a motion for judgment as a matter of law "at any time before the case is submitted to the jury."  Fed. R. Civ. P. 50(a)(2).  A court may grant the motion "[i]f a party has been fully heard on an issue during [the] jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).  A Rule 50(a) motion "must specify the judgment sought and the law and facts that entitle the movant to the judgment."  Fed. R. Civ. P. 50(a)(2).  A Rule 50(a) motion is "a prerequisite to a Rule 50(b) motion."  *Bilenky v. Ryobi Techs., Inc.*, 666 F. App'x 271, 275 n.4 (4th Cir. 2016) (quoting *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1249 (4th Cir. 1996)); *see*

*Qiydaar v. People Encouraging People, Inc.*, No. ELH-17-1622, 2021 WL 2260286, at *5 (D. Md. June 3, 2021) (same).  The Fourth Circuit has observed that "[t]he requirement of a proper directed verdict motion as foundation for a motion for judgment n. o. v. under Fed. R. Civ. P. 50(b) is not a mere technicality; it serves vitally important interests in the fair conduct of litigation."  *Miller v. Premier Corp.*, 608 F.2d 973, 980 n.3 (4th Cir. 1979).

"Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion."  Fed. R. Civ. P. 50(b), advisory comm. note to 2006 am.; *see also* Fed. R. Civ. P. 50(b), advisory comm. note to 1991 am. ("A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion."); *Windsor v. Bd. of Educ. of Prince George's Cnty., Md.*, No. TDC-14-2287, 2018 WL 812952, at *1 (D. Md. Feb. 8, 2018) (noting "the district court only can grant the Rule 50(b) motion on the grounds advanced in the [Rule 50(a) ] motion, because the former is conceived of only as a renewal of the latter" (quoting 9B Charles Allan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2537 (3d ed. 2010))).

Here, Reithoffer moved under Rule 50(a) for judgment as a matter of law as to negligence, but it did not make a similar motion as to last clear chance.  To be sure, Reithoffer made its Rule 50(a) motion as to negligence after the Court denied plaintiff's request for the last clear chance instruction.  But after the Court decided there was, in fact, sufficient evidence for the last clear chance instruction, Reithoffer did not make a Rule 50(a) motion for judgment as a matter of law as to last clear chance despite being given the opportunity to raise any new objections.  The Court cannot entertain a Rule 50(b) motion based on grounds that were not the subject of a preceding Rule 50(a) motion.  The Rule 50(b) motion is denied as improperly before the Court.

### B.  Last Clear Chance

Even though Reithoffer's Rule 50(b) motion is not properly presented, the Court will address Reithoffer's argument that there was insufficient evidence to support the jury's finding of last clear chance and that Reithoffer, therefore, is entitled to judgment as a matter of law.[1]

"Judgment as a matter of law 'is properly granted if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof.'" *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 391 (4th Cir. 2014) (quoting *Wheatley v. Wicomico Cnty.*, 390 F.2d 328, 332 (4th Cir. 2004)).  "In determining whether the nonmoving party has carried its burden as a matter of law, the district court 'may not substitute [its] judgment for that of the jury or make credibility determinations.'"  *Qiydaar*, 2021 WL 2260286, at *5 (quoting *De Simone v. VSL Pharm., Inc.*, 395 F. Supp. 3d 617, 622 (D. Md. 2019), *aff'd sub nom. De Simone v. Alfasigma USA, Inc.*, No. 19-1731, 2021 WL 613697 (4th Cir. Feb. 17, 2021)). Further, "[i]f the evidence as a whole is susceptible [to] more than one reasonable inference, a jury issue is created and a motion for judgment as a matter of law should be denied." *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489–90 (4th Cir. 2005).

The Court gave the following jury instruction on last clear chance: "A plaintiff who was contributorily negligent may nevertheless recover damages if the plaintiff was in a dangerous situation caused by the negligence of the defendant and the plaintiff, and, thereafter, the defendant

---

[1] If, as Reithoffer urges should have happened, the Court had not given the last clear chance instruction, the special verdict sheet would not have asked whether Reithoffer had the last clear chance to avoid the injury.  If that question had not been included and the jury found plaintiff contributorily negligent, Reithoffer would not have been found liable and Ms. Janson would not have recovered any damages.  *Harrison v. Montgomery Cnty. Bd. of Educ.*, 456 A.2d 894, 895 (Md. 1983) (observing that it is "the well-established law of this State [Maryland] that a plaintiff who fails to observe ordinary care for his own safety is contributorily negligent and is barred from all recovery, regardless of the quantum of a defendant's primary negligence" (citing *Schweitzer v. Brewer*, 374 A.2d 347 (Md. 1977); *Menish v. Polinger Co.*, 356 A.2d 233 (Md. 1976); *P. & C. R.R. v. Andrews*, 39 Md. 329 (1874))).

had a fresh opportunity, of which the defendant was aware, to avoid injury to the plaintiff but failed to do so." ECF 92, at 125:24 – 126:2. This instruction contains the essential elements of last clear chance: "(i) the defendant is negligent; (ii) the plaintiff is contributorily negligent; and (iii) the plaintiff makes "a showing of something new or sequential, which affords the defendant a fresh opportunity (of which he fails to avail himself) to avert the consequences of his original negligence." *Burdette v. Rockville Crane Rental, Inc.*, 745 A.2d 457, 469 (Md. Ct. Spec. App. 2000) (quoting *Liscombe v. Potomac Edison Co.*, 495 A.2d 838, 847 (Md. 1985)). "[T]he doctrine is only applicable when the defendant's negligence in not avoiding the consequences of the plaintiff's negligence is the *last* negligent act; and, cannot be invoked when [the] plaintiff's own act is the final negligence act, or is *concurrent* with [the] defendant's negligence." *Meldrum v. Kellam Distrib. Co.*, 128 A.2d 400, 404 (Md. 1957) (citing *McNab v. U. Rys. & Elec. Co.*, 51 A. 421, 423 (Md. 1902)) (emphasis in original). "[T]he doctrine [of last clear chance] does not mean that [a] defendant's primary negligence, without more, may serve again to charge him [or her] with a last clear chance." *Nationwide Mut. Ins. Co. v. Anderson*, 864 A.2d 201, 207 (Md. Ct. Spec. App. 2004) (quoting *Meldrum*, 128 A.2d at 404)). "'A fresh opportunity' is the operative phrase, for the doctrine will apply only if 'the acts of the respective parties [were] sequential and not concurrent.'" *Id.* (quoting *Burdette*, 745 A.2d at 469).

The trial evidence, when considered as a whole, is susceptible to a reasonable inference that Reithoffer's initial act of negligence was its failure to place a safety sign with the height restriction in a conspicuous location, that Ms. Janson's contributory negligence was her failure to observe objective warning signs of danger and her attempt to ride a kiddie ride, and that Reithoffer's subsequent act of negligence was the ride operator's grant of permission to ride the ride. When Ms. Janson asked the ride operator whether she could get on the ride, Reithoffer's

employee knew or should have known it was dangerous for an adult to attempt to board a kiddie

ride, and he had a "fresh opportunity" at that moment to protect Reithoffer's invitee from this

dangerous situation.  Because Reithoffer failed to avail itself of this opportunity, Ms. Janson fell

while trying to climb into the ride and was injured.  Under this reasonable interpretation of the

evidence, there was a legally sufficient evidentiary basis for the jury's finding of last clear chance.[2]

### 1. Defendant's Initial Act of Negligence

Before the Court turns to the evidence supporting Reithoffer's initial act of negligence, the

Court first must address the scope of Reithoffer's duty to Ms. Janson.  The parties stipulated that

Ms. Janson was Reithoffer's invitee.  ECF 92, at 125:3–11.  As the invitor, Reithoffer owed Ms.

Janson:

> a duty to exercise reasonable care to "protect [her] from injury caused by an
> unreasonable risk" that [she] would be unlikely to perceive in the exercise of
> ordinary care for . . . her own safety, and about which the owner knows or could
> have discovered in the exercise of reasonable care.

*Tennant v. Shoppers Food Warehouse Md. Corp.*, 693 A.2d 370, 374 (Md. Ct. Spec. App. 1997)

(quoting *Casper v. Chas. F. Smith & Son, Inc.*, 560 A.2d 1130, 1135 (Md. 1989)).  Reithoffer

owed its invitee Ms. Janson "[t]he highest duty."  *Id.* (citing *Casper v. Chas. F. Smith & Son, Inc.*,

526 A.2d 87, 92–93 (Md. Ct. Spec. App. 1987), *aff'd* 560 A.2d 1130 (Md. 1989)).  "The duties of

a business invitor . . . include the obligation to warn invitees of known hidden dangers, a duty to

inspect, and a duty to take reasonable precautions against foreseeable dangers."  *Id.*  To establish

a breach of the duty, there must be evidence that "not only a dangerous condition existed but also

that the [invitor] 'had actual or constructive knowledge of the dangerous condition and that the

knowledge was gained in sufficient time to give [the invitor] the opportunity to remove it or to

---

[2] The parties' dispute centers almost exclusively on whether either party breached its duty.  The
existence of a duty and injury has not been challenged.  To the extent the defendant challenges
causation, the Court addresses that argument below.

warn the invitee.'" *Joseph v. Bozzuto Mgmt. Co.*, 918 A.2d 1230, 1235 (Md. Ct. Spec. App. 2007) (quoting *Rehn v. Westfield Am.*, 837 A.2d 981, 984 (Md. Ct. Spec. App. 2003)).

The jury heard evidence that Reithoffer posts a safety sign on the fence surrounding the Space Ride.  This safety sign warns patrons that riders over 48 inches tall may not ride the ride. Reithoffer produced no witnesses who saw the safety sign near the Space Ride on the day of the accident.  No photographs of the safety sign taken that day were introduced into evidence.  Ms. Janson testified she did not see any warning signs near the ride.  Plaintiff's amusement park safety expert testified about a similar, if not identical, sign that he observed posted near the Space Ride during his inspection of the ride three years after the accident.  He said the sign contained "tiny, barely readable" print, was affixed to a 42-inch-high fence, and easily could be obstructed by people standing alongside the fence.  He testified that, in his opinion, the sign did not meet COMAR's requirements that a sign be in full view.  The jury heard from Reithoffer's corporate representative that safety signs are affixed to the fences surrounding all rides, including the Space Ride, and remain affixed all season.  However, a photograph of the ride adjacent to the Space Ride taken three years after the incident showed that, on at least that occasion, a safety sign was not affixed to the fence around that ride.

Based on this evidence, a reasonable jury could have found Reithoffer breached its duty to warn its adult patrons about the risks involved in attempting to ride the Space Ride by failing to place the safety sign in a location where its invitees could see it, by posting a sign with print too small to read, or by failing to display the sign altogether.  Any of these findings amounts to an initial act of negligence by Reithoffer.

   2.   *Plaintiff's Contributory Negligence*

Reithoffer, of course, was not an insurer of Ms. Janson's safety.  *Tennant*, 693 A.2d at 374

(citing *Moulden v. Greenbelt Consumer Serv., Inc.*, 210 A.2d 724, 725 (Md. 1965); *Lexington Mkt.*

*Auth. v. Zappala*, 197 A.2d 147 (Md. 1964)).  As an invitee, Ms. Janson had "a duty to exercise

due care for . . . her own safety."  *Id.*  "This includes the duty to look and see what is around the

invitee."  *Id.*  "Whether or not [an invitee] was using the caution expected of a reasonably prudent

person under the circumstances [is] a question of fact for the jury and not of law for the court."

*Diffendal v. Kash & Karry Serv. Corp.*, 536 A.2d 1175, 1178 (Md. Ct. Spec. App. 1988) (quoting

*Borsa v. Great Atl. & Pac. Tea Co.*, 215 A.2d 289, 292–93 (Pa. Super. Ct. Dec. 16, 1965)).

The jury heard evidence about objective signs that the Space Ride was designed for

children, not adults.  The ride was in an area of the fairgrounds where the kiddie rides were located.

The jury heard that Ms. Janson rode a kiddie ride with two-year-old Jessica before she tried to ride

the Space Ride with six-year-old Joseph.  Ms. Janson admitted she knew the ride she previously

rode had been safe for adults to ride because she saw other adults riding it, but she could not tell if

adults were riding the Space Ride before she attempted to board it.  In photographs of the Space

Ride admitted into evidence, the ride's interior and exterior design is visible to fairgoers standing

outside the fence encircling the ride.  The ride's tubs had only a foot and a half of space between

the rows.  Plaintiff's expert testified he would not have attempted to walk along the ride's platform

because it was too narrow.  Finally, the jury heard testimony about a height stick placed at eye

level near the entrance to the ride that could have alerted Ms. Janson to the ride's height

restrictions.

Based on this evidence, a reasonable jury could have found that Ms. Janson breached her

duty to exercise due care for her own safety by failing to appreciate the fact that other adults were

not riding the Space Ride, the asymmetry between her own size and the size of the ride's tubs and platform, or the significance of the height stick.  Having failed to appreciate these signs that it would be dangerous for an adult to board the ride, Ms. Janson asked the ride operator whether she could ride the ride and presented the ride operator with tickets to ride.  This evidence was sufficient for the jury to find that Ms. Janson was contributorily negligent when she attempted to ride the ride despite her actual or constructive knowledge of objective signs of danger.

### 3.   *Defendant's Fresh Opportunity to Avoid Consequences of Original Negligence*

The final element of last clear chance requires "a showing of something new or sequential, which affords the defendant a fresh opportunity (of which he fails to avail himself) to avert the consequences of his original negligence."  *Burdette*, 745 A.2d at 469 (quoting *Liscombe*, 495 A.2d at 847).  Whether a plaintiff can show a defendant had the last clear chance depends on what the defendant knew about the impending danger and when he knew it:

> Knowledge . . . on the part of the person causing the injury, superior to that of the injured person, is the ultimate basis of the doctrine, and it follows that time is an essential element thereof, because the doctrine is not applicable unless the defendant discovered the plaintiff's peril in time, by the exercise of ordinary care, to have avoided the accident.

*State v. Wash., B. & A. Elec. R.R.*, 131 A. 822, 828 (Md. 1926).  In *Nationwide Mutual Insurance Co. v. Anderson*, the Court of Special Appeals further explained:

> The last clear chance doctrine contemplates two or more parties who are both negligent, but one is in helpless peril unable to avoid the imminent danger.  The doctrine imposes liability on the party who is aware of the danger and is in control of the instrumentality and thus in a position to avoid the impending danger.  A plaintiff may avail himself or herself of the last clear chance doctrine if the defendant is in a position to act with reasonable care on the fresh opportunity to prevent the likely consequences.

864 A.2d 201, 208 (Md. Ct. Spec. App. 2004).

The jury heard testimony from Ms. Janson and her sister that they specifically asked the ride operator assigned to the Space Ride whether Ms. Janson, an adult who was obviously over 48

inches tall, could ride the ride with a six-year-old child.  According to both, the ride operator affirmatively said she could.  Based on their unrefuted testimony, it was reasonable for the jury to conclude that the ride operator knew Ms. Janson intended to board the ride and permitted her to do so.[3]  A reasonable jury could have found that this exchange between the ride operator and Ms. Janson—during which the invitee asked the invitor if it was safe for her to board an amusement park ride—was Reithoffer's fresh opportunity to prevent the likely consequences of its initial act of negligence, which was the failure to conspicuously post the safety sign with the height restriction.  Reithoffer suggests that the height restriction was meant to prevent harm to an adult while the ride was in motion, not harm that could occur when an adult tries to climb into the ride before it starts.  But Mr. Popovich told the jury the Space Ride was unsafe for adults because the tubs were not large enough to seat them.  He also said it was possible adults could get hurt while trying to get into the tub.  The jury, therefore, could have found the height restriction was meant to prevent adults over four feet tall from getting injured while attempting to climb into tubs designed to fit only small children—a dangerous situation that was a likely consequence of Reithoffer's failure to post the safety sign.   It was, therefore, reasonable to conclude that the ride

---

[3] The jury also could have reasonably concluded the ride operator had constructive knowledge she intended to board the ride.  In addition to testifying that she asked the ride operator for permission to ride the Space Ride, Ms. Janson testified that she gave him "[her] ticket."  ECF 89, at 104:16–21.  She could not remember the number of tickets she presented.  Based on this testimony, Reithoffer argues Ms. Janson did not prove that the number of tickets she handed the ride operator put him on notice that she and the child intended to ride.  However, Ms. Janson testified that she intended to ride and presented tickets for entry.  The jury was not required to reject her unopposed testimony purely because she could not recall, years later, the number of the tickets she presented.  The jury reasonably could have concluded that an adult intending to ride a carnival ride would not assume she could ride for free and would provide the ride operator with the correct number of tickets for herself and the child.  The ride operator was responsible for counting the tickets and checking for wristbands before admitting people to the ride, and the jury could have found that he should have detected that Ms. Janson intended to ride the ride when he verified the tickets she gave him.

operator—who was trained to enforce the height restriction and prevent adults from getting on the ride—knew or should have known that Ms. Janson was in danger when she attempted, and was granted permission, to ride the ride.[4]   Under this fair interpretation of the evidence, the ride operator's knowledge of the impending danger that Ms. Janson faced was superior to hers because he knew she was about to board the ride and assured her it was safe to do so despite having been trained that the ride was unsafe for riders her height. *See Carter v. Senate Masonry Inc.*, 846 A.2d 50, 56 (Md. Ct. Spec. App. 2004) (reversing trial court's grant of judgment notwithstanding the verdict and reinstating the jury's verdict for plaintiff because the defendant-forklift operator had superior knowledge of the risk and the ability to avoid the injury).   Thus, the evidence supported a finding that the ride operator failed to avail himself of a fresh opportunity to tell Ms. Janson she could not get on the Space Ride and protect her from the dangers associated with an adult attempting to board it.

Reithoffer takes the position that, to prove the ride operator had a "fresh opportunity" to avert Ms. Janson's injuries, plaintiff must have introduced evidence that the ride operator knew she was about to fall, that he physically could have prevented the fall but failed to do so, and that Ms. Janson was physically incapable of avoiding the fall.  Reithoffer argues that, only under those circumstances, could Ms. Janson prove that "the defendant could, and the plaintiff could not, by use of the means available avert the accident."  *See Wooldridge v. Price*, 966 A.2d 955, 961–62 (Md. Ct. Spec. App. 2009) (quoting *U. Rys.*, 157 A. 280) (internal quotation marks omitted). Reithoffer's position is not supported by the caselaw.  The Maryland Court of Special Appeals

---

[4] For these reasons, the danger was reasonably foreseeable to the ride operator.  *See Yonce v. SmithKline Beecham Clinical Labs., Inc.*, 680 A.2d 569, 576 (Md. Ct. Spec. App. 1996) (noting foreseeability occurs where "the defendant should have foreseen the 'general field of danger,' not necessarily the specific kind of harm to which the injured party would be subjected as a result of the defendant's negligence") (quoting *Stone v. Chi. Title Ins. Co.*, 624 A.2d 496, 500 (Md. 1993)).

has, on several occasions, written that the doctrine of last clear chance "'assumes' that, after the primary negligence of the plaintiff and defendant, 'the defendant could, and the plaintiff could not, by use of the means available avert the accident.'"  *See, e.g.*, *Anderson*, 864 A.2d at 207 (quoting *U. Rys.*, 157 A. 280); *Wooldridge*, 966 A.2d at 961–62 (quoting *Carter*, 846 A.2d at 54 (quoting *U. Rys.*, 157 A. 280)).  Yet, that quotation, which has been attributed to *United Railways* or cases citing the same, does not appear in the Court of Appeals' decision in *United Railways*.  *See U. Rys.*, 157 A. at 280–83.  In *United Railways*, a plaintiff-truck driver was positioned 2–3 feet over streetcar tracks, and an oncoming streetcar collided with the truck.  157 A. at 282–83.  The Court noted that "there [was] not the faintest gleam of evidence to show that the [streetcar driver] could then have stopped the car or checked its speed in time to avoid the collision.  Nor [was] there any evidence that at that time the [plaintiff] could not have extricated himself from his position of peril *by the exercise of ordinary care*.  All he had to do was to back his truck 2 or 3 feet."  *Id.* at 283 (emphasis added).  The Court continued: "But even if there were evidence that the [streetcar driver] could have stopped the car after he saw or should have seen the truck in a position of peril, still, if the [plaintiff] could have then escaped *by the exercise of ordinary care* on his part, the [last clear chance] doctrine would not apply."  *Id.* (emphasis added).  Fairly read, *United Railways* stands for the proposition that the exercise of ordinary care is the touchstone of last clear chance and negligence.  To the extent cases discuss last clear chance as occurring only when a defendant could, and a plaintiff could not, "by use of the means available" avert the accident, "by the exercise of ordinary care" should be read into that statement of the law.  As the Court reads the law, the application of the last clear chance doctrine is not limited to the scenario Reithoffer describes.

Reithoffer argues there was insufficient evidence adduced at trial that Ms. Janson exercised ordinary care for her own safety after she received permission to ride from the ride operator.

Reithoffer claims she failed to exercise ordinary care by attempting to get into a tub that, when viewed up close, was obviously designed for children and clearly too small to fit a grown adult. Reithoffer also claims that Ms. Janson failed to exercise ordinary care to avoid falling as she stepped into the tub.  According to Reithoffer, this conduct, not the ride operator's conduct, were the last negligent acts that proximately caused plaintiff's injuries, rendering last clear chance inapplicable.  ECF 94, at 5 ("The rationale behind the concept of last clear chance is that 'if the defendant has the last clear opportunity to avoid the harm, the plaintiff's negligence is not a proximate cause of the result.'" (quoting *Ritter v. Portera*, 474 A.2d 556, 558 (Md. Ct. Spec. App. 1984))).  Whether Ms. Janson exercised ordinary care for her own safety after she was granted permission to ride the ride was a question of fact for the jury.  *Diffendal*, 536 A.2d at 1178.

The jury saw pictures of the Space Ride taken from outside the fence surrounding the ride. Based on those pictures, the jury could have concluded that Ms. Janson could see, before she walked onto the ride's platform, that the tub's interior was small and had three rows of seats with less than two feet between each row.  Nevertheless, the jury could have concluded that Ms. Janson's decision to get into the tub, even after seeing up close its size and configuration, was reasonable because she and her sister specifically asked the operator in charge of the ride if she could ride with a child and the operator said she could.  The jury could have found that a reasonably prudent person, in the same circumstances as Ms. Janson, would have done what she did. Reithoffer essentially asks this Court to conclude that Ms. Janson's attempt to ride the ride, even after she received explicit permission to do so from the person in charge, was negligent as a matter

of law.  Based on the trial evidence, such a finding is unwarranted. The Court may not substitute its own judgment for that of the jury.[5]

Even if the jury concluded that Ms. Janson's attempt to get into the tub after seeing its interior up close was unreasonable, the jury could have found that this negligent act was a continuation of her initial negligent act.  That act was set in motion when she requested permission to ride, which the ride operator granted, and presented him with tickets, which he accepted.  Courts have consistently found last clear chance applicable where a plaintiff's contributory negligence was still in progress when the defendant's second act of negligence occurred.  *See, e.g.*, *Ritter*, 474 A.2d at 559 (holding last clear chance applicable where the defendant's primary negligence was inviting the plaintiff to sit on the hood of his vehicle, the plaintiff's contributory negligence was sitting on the hood of the car, and the defendant's last clear chance occurred as he hit the gas pedal and sped away, injuring the plaintiff before she finished sitting down); *Smiley v. Atkinson*, 280 A.2d 277, 279–83 (Md. Ct. Spec. App. 1971) (holding last clear chance applicable where the plaintiff's contributory negligence was operating a maintenance vehicle in a regular traffic lane

---

[5] Reithoffer relatedly argues Ms. Janson was not in "helpless peril" because she could and should have realized, when she saw the size of the tub, that getting into a tub fit only for children would be dangerous and she should not have tried to climb in.  ECF 94, at 6.  To the extent a plaintiff asserting last clear chance must prove "helpless peril," there was sufficient evidence for the jury to find that Ms. Janson, having been explicitly granted permission to get into the tub, was helpless to avoid the dangerous situation because she was told, and believed, what she was doing was safe. Under that reasonable interpretation of the evidence, her helplessness arose not from any physical incapacity but rather a lack of awareness of the danger.  Indeed, a fair interpretation of the jury's finding that Ms. Janson did not assume the risk of her injury is that the jury found she did not fully know and appreciate the risk and that she was therefore unable to avoid it.  *See Thomas v. Panco Mgmt. of Md., LLC*, 31 A.3d 583, 588 (Md. 2011) (identifying the elements of assumption of the risk and noting "[t]he question of whether the plaintiff had knowledge and appreciation of the particular risk at issue is ordinarily a question for the jury, 'unless the undisputed evidence and all permissible inferences therefrom *clearly* establish that the risk of danger was *fully* known to and *understood* by the plaintiff.'" (quoting *Schroyer v. McNeal*, 592 A.2d 1119, 1123 (Md. 1991) (quotation omitted) (emphasis added))).

for about three minutes and rejecting the defendant's argument that the plaintiff's continuing negligence prohibited application of last clear chance), *aff'd mem.*, 287 A.2d 770 (Md. 1972); *Cohen v. Rubin*, 460 A.2d 1046, 1049, 1051–52 (Md. Ct. Spec. App. 1983) (finding last clear chance was appropriately submitted to the jury where two boys started to cross a street outside the confines of a crosswalk, one boy retreated to the median, one continued crossing, and a speeding motorist struck the boy in the street despite warnings from his passenger that there were pedestrians in the street); *Carter*, 846 A.2d at 51, 54–56 (finding a reasonable jury could have found last clear chance where a forklift operator twice placed materials on a construction site near a kneeling individual, who was aware the forklift was drawing nearer but did not move, and the materials fell and struck the kneeling individual).

Ms. Janson's duty to exercise ordinary care for her own safety continued as she tried to climb into the tub. She testified that she put her left foot in the tub while her right foot was firmly on the platform. She lifted her right foot somewhat off the platform and fell. Her left foot was caught in the tub as she fell backward. No other witness testified to how Ms. Janson tried to climb into the tub. Reithoffer argued to the jury that Ms. Janson failed to exercise ordinary care not to lose her balance as she stepped into the tub. To the extent there was evidence to support that argument, the jury could have discounted, disbelieved, or ignored it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ."). There was sufficient evidence for the jury to find that Ms. Janson exercised the caution expected of a reasonably prudent person when she tried to step into the tub.

The Court finds there was legally sufficient evidence to support the jury's finding that Reithoffer had the last clear chance to avoid Ms. Janson's injuries.  Under these circumstances, the Court may not grant judgment as a matter of law.

### C.  Rule 16

Reithoffer claims it is entitled to judgment as a matter of law because Ms. Janson did not indicate in the parties' Rule 16 joint pretrial statement that she intended to raise last clear chance at trial.[6]  Reithoffer argues plaintiff did not raise last clear chance as an issue until after the close of evidence when her Rule 50(a) motion as to contributory negligence was denied and plaintiff knew she would recover no damages if the jury found her contributorily negligent.  Reithoffer asserts it was blind-sided by the last clear chance argument, that it would have presented other evidence had it known plaintiff would assert last clear chance, and that the post-trial remedy for raising an issue not included in the pretrial statement is judgment as a matter of law.  These arguments fail for several reasons.

Reithoffer never raised this Rule 16 argument during trial.  Reithoffer did not object to evidence, argument, or instructions on the grounds that last clear chance was not included in the parties' joint pretrial statement or in the proposed jury instructions.  The Court is unaware of any

---

[6] Rule 16(d) provides that "[a]fter any conference under [Rule 16], the court *should* issue an order reciting the action taken."  Fed. R. Civ. P. 16(d) (emphasis added).  The parties submitted a joint pretrial statement, ECF 47, and the Court held the pretrial conference.  But the Court did not enter a final pretrial order.  The Court recognizes that even though Rule 16 does not require a pretrial order, its Local Rules do.  Loc. R. 106 (D. Md. 2021).  The failure to enter a pretrial order in this case was not intentional.  This oversight notwithstanding, a pretrial order is the legal mechanism essential to enforcing compliance with Rule 16.  *See Bristol Steel & Iron Works v. Bethlehem Steel Corp.*, 41 F.3d 182, 185 (4th Cir. 1994) ("no pretrial order governing management of this action was entered pursuant to Fed. R. Civ. P. 16; thus, there was no mechanism in place to preclude . . . [the] testimony" of two witnesses not identified prior to trial).  In any event, the Court will not hold the oversight against defendant for purposes of the pending motion and will consider defendant's arguments as if a pretrial order incorporating the parties' joint pretrial statement had been entered.

caselaw authorizing the grant of a Rule 50(b) motion for judgment as a matter of law based on an alleged Rule 16 violation that never was raised during trial.  Renewed post-trial motions for judgment as a matter of law test the legal sufficiency of the evidence as to a particular issue.  They are not a mechanism by which the Court may set aside a jury verdict because evidence or argument exceeded the scope of a Rule 16 pretrial statement.

Reithoffer argues *Mullins v. Mayor and City Council of Baltimore*, No. TJS-14-2698, 2017 WL 3394763 (D. Md. Aug. 8, 2017), *aff'd mem.*, 721 F. App'x 318 (4th Cir. 2018), stands for the proposition that "a Motion for a Directed Judgment or New Trial is an appropriate Remedy for a Rule 16 violation."  ECF 94, at 14.  The Court disagrees.  In *Mullins*, Judge Sullivan presided over a jury trial in a civil suit brought by a City of Baltimore employee who alleged the City failed to accommodate his physical disability.  2017 WL 3394763, at *1.  The jury found in the defendant's favor, and the plaintiff filed a motion for a new trial under Rule 59(a).  *Id.*  Plaintiff argued a new trial was necessary because the Court erred in its response to a jury note asking for clarification about the types of accommodations it was supposed to consider.  *Id.* at *3.  The Court instructed the jury that only one of the four accommodations listed in the note—a mechanical lift—was at issue in the case.  *Id.* at *2.  In his motion for a new trial, plaintiff argued that by instructing the jury that only a mechanical lift (and not a ladder, step ladder, or milk crate) was the accommodation requested, the Court improperly made a finding of fact reserved for the jury.  *Id.* at *3.  Judge Sullivan denied the motion for a new trial, finding, *inter alia*, that the plaintiff had waived the right to try any accommodations other than the mechanical lift because the lift was the only accommodation identified in the pretrial statement.  *Id.* at *3–4.  Judge Sullivan therefore held the plaintiff failed to demonstrate prejudice resulted from his ruling on the sufficiency of the evidence with respect to the other possible accommodations.  *Id.* at *4.  *Mullins* is distinguishable for several

reasons.  The plaintiff in *Mullins* sought a new trial under Rule 59(a), not judgment as a matter of law under Rule 50(b).  The parties in *Mullins* did not seek and the Court did not grant relief based on a Rule 16 violation.  Rather, the Court in *Mullins* relied on the scope of the parties' Rule 16 pretrial statement to explain that its response to the jury's question was appropriate or, alternatively, not prejudicial.  *Mullins* does not stand for the proposition that a motion for directed judgment or new trial is an appropriate remedy for a Rule 16 violation.  Nor does it lend support for Reithoffer's post-trial effort to set aside a jury verdict, through a Rule 50(b) motion, based on a Rule 16 violation it failed to raise at trial.

Another case Reithoffer cites, *McLean Contracting Co. v. Waterman Steamship Corp.*, 277 F.3d 477 (4th Cir. 2002), also does not support its position.  Relying on *McLean*, Reithoffer argues plaintiff waived her right to have the last clear chance issue tried because she did not identify it as a theory of recovery in the pretrial statement.  ECF 77-1, at 8 (citing *McLean* for the proposition that a failure "to identify a legal issue worthy of trial in the pretrial conference or pretrial order waives the party's right to have that issue tried").  Reithoffer's reliance on *McLean* is misplaced.  In *McLean*, the Rule 16 violation was raised in a pretrial motion to exclude evidence, and the Fourth Circuit considered on appeal whether the trial court abused its discretion by excluding evidence not contained in the pretrial order.  277 F.3d at 479–80.  Here, Reithoffer did not move during trial to exclude evidence or argument based on a Rule 16 violation.  Rather, it has raised an alleged Rule 16 violation, and cited *McLean*, for the first time in a post-trial Rule 50(b) motion

seeking judgment as a matter of law. *McLean* does not authorize trial courts to grant the relief Reithoffer seeks.[7]

Reithoffer could have raised a Rule 16 objection to the assertion of a last clear chance defense during trial. Reithoffer arguably first had notice during plaintiff's cross-examination of its corporate representative, Mr. Popovich, that last clear chance would be raised. Mr. Popovich agreed that "the ride operator is in a position of authority or power over the customers" and that the ride operator was "literally the gatekeeper for who can get on that ride." ECF 92, at 57:5–10. He also agreed the ride operator "has the authority to prohibit people from riding." *Id.* at 57:11–12. He further testified the ride operator "is to check the height requirements. That's his job." *Id.* at 57:22–23. Plaintiff's counsel asked: "Let's pretend that someone doesn't see the sign. Let's pretend someone speaks Spanish and doesn't read the sign. Someone comes up to [the ride operator] and gives him tickets as an adult above 38 [sic] inches, [the ride operator] is the last person to stop that person from riding the ride." *Id.* at 58:15–19. Mr. Popovich replied, "If you're assuming that [he was letting the woman ride the ride], then yeah . . . ." *Id.* at 58:20, 23. When plaintiff's counsel asked Mr. Popovich whether a ride operator is the "last stop if people don't see the sign," Reithoffer's counsel objected to the question but did not cite specific grounds for the

---

[7] Moreover, *McLean* is factually distinguishable. In *McLean*, the plaintiff sued the defendant, a barge owner responsible for an allision with a bridge that the plaintiff had been repairing. 277 F.3d at 478. In the pretrial order, the defendant-barge owner stipulated that it was the "operator" of the barge. *Id.* at 480. A few days before trial, the defendant changed course entirely, asserting a third-party contractor with whom it contracted to operate the barge was the legally responsible operator. *Id.* at 479. Before trial, the judge excluded evidence related to the defendant's agency defense. *Id.* at 480. In that circumstance, plaintiff was prejudiced because the defendant's sudden change in position would have forced plaintiff to gather evidence to prove the previously undisputed issue of agency. Here, by contrast, the issue of which party's negligence caused plaintiff's injury has been in dispute since Reithoffer answered the complaint and asserted a defense of contributory negligence. Reithoffer has not claimed it was asked to prove facts it was not prepared to prove, and Reithoffer has maintained it could not produce the ride operator.

objection.  *See* ECF 92, at 57:18–19, 20–21.[8]  The objection was overruled.  The evidence closed without any objection by Reithoffer that last clear chance was not included in the pretrial statement.

Even if Mr. Popovich's testimony did not put Reithoffer on notice of the last clear chance issue, Reithoffer was on notice when plaintiff's counsel raised the issue explicitly during argument on her Rule 50(a) motion regarding contributory negligence.  Counsel argued, "if the Court feels otherwise [that the issue of contributory negligence should go to the jury], of course the doctrine of last clear chance has to go to the jury, because in the testimony this morning, Mr. Popovich admitted that had she not seen the sign the ride operator is—has the last clear chance to tell her no and not take the tickets."  *Id.* at 79:10–14.  At that point, Reithoffer could have objected on the grounds that last clear chance was not included in the pretrial statement.  It did not.  And when the Court heard argument on the last clear chance instruction and ultimately decided to give the instruction, Reithoffer did not object to its inclusion based on a Rule 16 violation.  Indeed, the trial ended without any argument from Reithoffer that plaintiff's evidence or legal theory exceeded the scope of the parties' pretrial statement.[9]

---

[8] *See Callahan v. Pac. Cycle, Inc.*, 756 F. App'x 216, 223 (4th Cir. 2018) ("The basis of the objection must be stated specifically. . . .'") (quoting *United States v. Zayyad*, 741 F.3d 452, 459 (4th Cir. 2014)).

[9] The Court will not speculate, months after trial, how it would have ruled on a Rule 16 objection to last clear chance.  The Court notes, however, that pretrial orders "should be construed liberally 'to cover any of the legal or factual theories that might be embraced by their language.'" *Shetterly v. Raymark Indus., Inc.*, 117 F.3d 776, 784 (4th Cir. 1994) (quoting *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 818 (10th Cir. 1974)); *see also In re Lone Star Indus., Inc. Concrete R.R. Cross Ties Litig.*, 19 F.3d 1429, 1994 WL 118475, at *5 (4th Cir. 1994) (Table) ("Any other [than a liberal] construction of the pre-trial order would tend to unduly constrict the trial of the case and defeat the central and salutary purpose of the Federal Rules of Civil Procedure *to insure the trial of every lawsuit on its merits. . . . It is a procedural tool to facilitate the trial of a lawsuit on its merits and not to defeat it on a technicality.*") (quoting *Century Ref. Co. v. Hall*, 316 F.2d 15, 20 (10th Cir. 1963) (emphasis in original) (Table)).  The issue in this case always has been whose negligence—plaintiff's or defendant's—proximately caused plaintiff's injuries.

Reithoffer now argues it was prejudiced by the surprise introduction of last clear chance at trial. It claims that, had it known last clear chance would be argued, it would have asked Ms. Janson and other witnesses who observed the fall "whether an operator was near her on the platform when she attempted to step into the ride." ECF 77-1, at 10. But Reithoffer knew about the last clear chance argument before the case was submitted to the jury. After the Court granted plaintiff's request for the last clear chance instruction, the Court asked counsel whether there were any other objections to the instructions and granted defense counsel time to review them. Counsel did not object on Rule 16 grounds. At that point, Reithoffer could have asked to reopen the evidence to elicit testimony from Ms. Janson or other witnesses. *See*, *e.g.*, *Callahan*, 756 F. App'x at 221 (noting the district court took steps to cure the surprise by permitting the appellants to recall their own expert to rebut evidence of a theory not identified in the pretrial order). Reithoffer previously argued "there's absolutely no evidence whatsoever that there was a ride operator near Ms. Janson when she decided to try and get into the ride." ECF 92, at 83:1–4. If Reithoffer believed it needed to confirm that fact by recalling Ms. Janson, it could have. It either failed or elected not to do so.[10]

Reithoffer is not entitled to judgment as a matter of law based on the asserted Rule 16 violation.

---

[10] *See Meadow Gold Products Co. v. Wright*, 278 F.2d 867 (D.C. Cir. 1960) (finding trial counsel was bound by his strategic decision not to ask for a continuance or reopening of evidence when counsel first learned during argument on jury instructions that plaintiff would rely on the last clear chance defense even though last clear chance was "not specifically framed by the pleadings or the pretrial order").

**ORDER**

For the reasons stated in this Memorandum Opinion and Order, it is hereby ORDERED

that Reithoffer's motion for judgment notwithstanding the verdict, ECF 77, is denied.

Date: <u>November 12, 2021</u>

                                             _____
                                             Deborah L. Boardman
                                             United States District Judge